UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL KATON, individually and as Guardian Ad Litem for C.K., K.K. and T.K.; and SARA KATON,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIV. 16-5023-JLV<br><br>ORDER |

## INTRODUCTION

Plaintiffs filed a complaint against the United States pursuant to the Federal Tort Claim Act ("FTCA"), 28 U.S.C. § 2671 et seq. (Docket 5). The United States filed its answer. (Docket 7). Plaintiff filed a motion for partial summary judgment on liability together with a legal memorandum, plaintiffs' statement of undisputed material facts and an affidavit. (Dockets 37-40). Plaintiffs also filed a motion for a trial date together with a legal memorandum and affidavit. (Dockets 41-43). The government filed a legal memorandum in resistance to plaintiffs' motion for partial summary judgment together with its own statement of undisputed material facts, the government's response to plaintiffs' statement of undisputed facts and a declaration. (Dockets 45-48). The government also filed a legal memorandum and declaration in resistance to

plaintiffs' motion for a trial date. (Docket 49-50). For the reasons stated below, both of plaintiffs' motions are denied without prejudice.

**ANALYSIS**

This FTCA action centers on a two-vehicle collision on September 20, 2013, which occurred when a United States Postal Service ("USPS") vehicle driven by Charles Pickett collided with an automobile driven by Sara Katon. (Docket 5 ¶ 3). Allegedly injured in the collision were Mrs. Katon and her children, C.K., K.K. and T.K. Id. Among other claims, plaintiffs allege Mr. Pickett was negligent by failing to keep a proper lookout and failing to act prudently under the circumstances. Id. at ¶ 9.

The government's answer admits Mr. Pickett was acting in the scope and course of his employment with the USPS at the time of the collision. (Docket 7 ¶ 3). The government admits plaintiffs' administrative claims under the FTCA were properly submitted and denied. Id. ¶ 8. Defendant's answer asserts among other affirmative defenses, contributory negligence. Id. ¶ 12.

FEDERAL TORT CLAIMS ACT

Section 1346(b)(1) of Title 28 confers exclusive jurisdiction to the district courts over "civil actions on claims against the United States, for money damages . . . for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). When resolving claims under the FTCA, federal courts look to the law of the state where the tort occurred, here, South Dakota. <u>Washington v. Drug Enforcement Administration</u>, 183 F.3d 868, 873 (8th Cir. 1999) (Under the FTCA, "[t]he United States is liable to the same extent that a private person under like circumstances would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The 'law of the place' refers to the substantive law of the state where the wrongful conduct took place.") (additional citations omitted); <u>Celestine v. United States</u>, 841 F.2d 851, 853 (8th Cir. 1988) (<i>per curiam</i>) ("Government liability under the FTCA is determined by the law of the place where the tort occurred . . . .") (additional citations omitted).

"Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." <u>Janis v. Nash Finch Co.</u>, 780 N.W.2d 497, 500 (S.D. 2010) (internal quotation marks omitted) (quoting <u>Stone v. Von Eye Farms</u>, 741 N.W.2d 767, 770 (S.D. 2007)). "The existence of a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks, is elemental to a negligence action." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Poelstra v. Basin Elec. Power Coop.</u>, 545 N.W.2d 823, 825 (S.D. 1996)).

Under South Dakota law "[e]very person is responsible for injury to the person, property, or rights of another caused by his . . . want of ordinary care or skill, subject . . . to the defense of contributory negligence." SDCL § 20-9-1. Contributory negligence is an affirmative defense which must be pled. SDCL § 15-6-8(c). A claim of contributory negligence by a party asserting a claim "does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence." SDCL § 20-9-2. "The comparison is made with the negligence of the defendant, rather than with the ordinarily prudent person. Lovell v. Oahe Elec. Co-op., 382 N.W.2d 396, 399 (S.D. 1986) (citing Crabb v. Wade, 167 N.W.2d 546, 549 (S.D. 1969)). "[Ordinarily] questions of negligence and contributory negligence are for the [factfinder] in all but the rarest cases." Robbins v. Buntrock, 550 N.W.2d 422, 427 (S.D. 1996) (citing Nelson v. Nelson Cattle Co., 513 N.W.2d 900, 903 (S.D. 1994)).

SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of

4

material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986); Fed. R. Civ. P. 56(e) (each party must properly support its own

assertions of fact and properly address the opposing party's assertions of fact,

as required by Rule 56(c)).   Only disputes over facts that might affect the

outcome of the case under the governing substantive law will properly preclude

summary judgment.   Anderson, 477 U.S. at 248.   Accordingly, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement

is that there be no genuine issue of material fact."   Id. (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party,

then summary judgment is not appropriate.   Id.   However, the moving party is

entitled to judgment as a matter of law if the nonmoving party fails to "make a

sufficient showing on an essential element of her case with respect to which

she has the burden of proof."   Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).   In such a case, "there can be 'no genuine issue as to any material

fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."   Id. at

323.

In determining whether summary judgment should issue, the facts and

inferences from those facts must be viewed in the light most favorable to the

nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to [the factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

FACTUAL SUMMARY

Viewing the evidence in the light most favorable to the government as the nonmoving party, the following factual summary must be considered.

On September 20, 2013, USPS employee Mr. Pickett was driving his normal mail delivery route. (Docket 46 ¶ 1). He stopped at a gas station on Highway 14A in Lead, South Dakota, for a break before continuing with deliveries on Sunny Hill Drive above Main Street. Id. He normally stops at Lynn's DakotaMart gas station to take a break before going up Sunny Hill Drive because there is nowhere nearby to stop for a drink or bathroom break. Id. ¶ 2. Mr. Pickett was running a little bit behind schedule but was not in any hurry when leaving the gas station. Id. ¶ 3.

Mr. Pickett typically goes straight out of the driveway of the gas station directly across Highway 14A to take Sunny Hill Drive up the hill. Id. ¶ 4. The postal vehicle has a large window, two smaller windows, door windows and mirrors on each side, which can cause a slight obstruction. (Docket 39 ¶ 3).[1] His standard practice when crossing Highway 14A to go up to Sunny Hill Drive

---

[1]Where plaintiffs' statement of a material fact is undisputed, the court will cite only to the originating document.

is to look left and right.   (Docket 46 ¶ 5).   Sometimes he will even look left and right again just to make sure traffic is clear.   <u>Id.</u>   Due to the makeup of the postal vehicle, Mr. Pickett testified he is trained to take extra time to look both ways, multiple times.   <u>Id.</u> ¶ 19.   He stated his head has to be on a swivel, and he called it a "bobble-head effect," because he constantly has to look to make sure he has a clear view.   <u>Id.</u>

Prior to pulling out of the gas station's parking lot, Mr. Pickett's vehicle was in a stopped position and pointed straight toward Sunny Hill Drive.   <u>Id.</u> ¶ 6.   Before crossing the intersection, Mr. Pickett looked left and right and saw a car, which was not Mrs. Katon's vehicle, stopped at a stop sign at the bottom of Sunny Hill Drive directly facing him.   <u>Id.</u> ¶ 7.   Mr. Pickett indicated he was keeping an eye on this other car because he did not know what that car was going to do.   <u>Id.</u> ¶ 8.

Mr. Pickett normally creeps out to the edge of the gas station parking lot far enough to see both lanes of oncoming traffic on Highway 14A before proceeding across to Sunny Hill Drive.   <u>Id.</u> ¶ 15.   He stated he takes care at that intersection because it is such a busy area.   <u>Id.</u> ¶ 17.   Mr. Pickett testified that prior to the accident he had looked multiple times to the left and to the right and was also looking at the car at the stop sign across the road. <u>Id.</u>

Mr. Pickett estimated his speed through the intersection was less than 10 miles per hour.   <u>Id.</u> ¶ 16.   He testified he did not see Mrs. Katon's vehicle

until after the collision, when his vehicle's front bumper hit the middle of the driver's side of her car.  <u>Id.</u> ¶ 20.  He remembers seeing the flash of the Katon vehicle in front of his vehicle and hearing the tires squealing.  (Docket 39 ¶ 9). Because of the collision, Mrs. Katon's vehicle spun around and stopped in the oppose direction from which it had been traveling.  <u>Id.</u> ¶ 6.  The Katon vehicle was totaled.  <u>Id.</u> ¶ 1.

At the time of the collision, Mrs. Katon had all three of her daughters in the car with her.  (Docket 46 ¶ 23).  Mrs. Katon believes the radio was playing music, her daughters were probably talking and her small dog was somewhere in the vehicle with them.  <u>Id.</u> ¶¶ 26-27.

Mrs. Katon testified she had a green light and had just turned right onto Highway 14A immediately before the accident.  <u>Id.</u> ¶ 14.  She testified that as she made a right turn towards where the collision occurred, she did not have to stop because she had a green light.  <u>Id.</u> ¶ 25.  She estimates her car was going 20, maybe 25 miles per hour at the time of the collision because she was still accelerating immediately prior to the collision.  <u>Id.</u> ¶¶ 31-32.

Upon impact, Mrs. Katon thought her vehicle had hit something, although she did not see anything.  <u>Id.</u> ¶ 30.  It was not until after the collision that she saw the postal truck.  <u>Id.</u> ¶ 29.

Mrs. Katon told Mr. Pickett that she was coming "up Glover's Hill" before turning right onto Highway 14A.  (Docket 46 ¶ 12).  Mr. Pickett testified that if a vehicle was coming the route described by Mrs. Katon and turning right at

8

the traffic light on to Highway 14A, "it's almost a blind corner because they are actually facing downhill and it is very steep."  Id. ¶ 13.

After the collision Mr. Picket drew a diagram showing where his USPS vehicle was in relation to Mrs. Katon's car.  (Docket 46 ¶ 9) (referencing Docket 48-3).  Mr. Pickett testified the drawing was generally accurate except the angle of his travel from the gas station across the intersection with Highway 14A to Sunny Hill Drive was straight across rather than at the diagonal.  Id. ¶ 10.  The drawing included the third car which was directly across from him as he tried to cross the intersection.[2]  Id.

SUMMARY JUDGMENT ANALYSIS

Because Mr. Pickett's vehicle pulled out from the gas station and hit Mrs. Katon's vehicle and because Mr. Pickett did not believe Mrs. Katon did anything wrong, plaintiffs argue "[t]here is no genuine issue of material fact that exists precluding the entry of judgment in Plaintiffs' favor on the issue of liability."  (Docket 38 at p. 3).  The government resists plaintiffs' motion. (Docket 45).

"Although Pickett was not in the favored driving position at the time of the accident," the government argues "there are disputes as to whether Sara

_____

[2]According to the drawing, the third car was in the wrong lane at the stop sign.  See Docket 48-3.  The location of Mr. Pickett's vehicle appears to be set, not in a driveway, but partially off the driving path.  Id.  Other than showing the general layout of the various roadways, the diagram is of little assistance to the court.

Katon was in a favored position such that she was able to be seen prior to the accident." Id. at p. 1. Contending that Mr. Pickett's conduct prior to the collision "was reasonable" and "there is sufficient evidence in the record that Sara Katon may have breached her duty to exercise reasonable care" the government argues "the affirmative defense of contributory negligence precludes summary judgment . . . ." Id.

The government acknowledges that "[w]hen the alleged negligence involves a collision at an intersection, the South Dakota Supreme Court . . . has generally established that 'a motorist who enters an intersection from an unfavored road . . . and fails to yield to a favored vehicle . . . is negligent as a matter of law.' " Id. at p. 7 (citing Esterling v. McGehee, 102 F. Supp. 3d 1116, 1120 (D.S.D. 2015) (citing Carpenter v. City of Belle Fourche, 609 N.W.2d 751, 759 (S.D. 2000); Davis v. Knippling, 576 N.W.2d 525, 527-28 (S.D. 1998)).

The government submits "[a]n intersectional collision is not proof by itself that fault lies with the unfavored driver. As [the South Dakota Supreme Court has] often recognized, the mere fact that an accident happened creates no inference that it was caused by someone's negligence." Id. at p. 8 (citing Carpenter, 609 N.W.2d at 759 (citing Del Vecchio v. Lund, 293 N.W.2d 474, 476-77 (S.D. 1980)). "Before a verdict can be properly directed in such a case," the government contends "the position of the oncoming vehicle must be definitely located in a favored position, that is,

that it was within that radius which denotes the limit of danger." Id. (citing Del Vecchio, 293 N.W.2d at 477 (internal quotation marks and brackets omitted) (citing Jershin v. Becker, 351 N.W.2d 48, 52 (Neb. 1984)). The government submits that "[w]hether [Mrs. Katon] looked and failed to see a vehicle within the zone of danger" is an issue to be resolved by the trier of facts "except in those rare instances when the evidence is so definite that reasonable minds could not differ." Id. (citing Carpenter, 609 N.W.2d at 759).

The government asserts plaintiffs cannot recover because Mrs. Katon's negligence is greater than slight when compared to the negligence, if any, of Mr. Pickett. Id. at p. 13. Even though Mrs. Katon may have had the right-of-way, the government argues "even favored drivers 'must use reasonable care with due regard for the safety of others . . . . That drivers have the right-of-way will not relieve them of the duty to look for cars approaching on an intersecting road.' " Id. (citing Esterling, 102 F. Supp. 3d at 1122) (citing Carpenter, 609 N.W.2d at 758).

Even if the court were to find Mr. Pickett was negligent, his negligence must still be compared to Mrs. Katon's conduct to evaluate contributory negligence. "The term slight in SDCL § 20-9-2 has been defined to mean small in quantum in comparison with the negligence of the [other party]." Estate of He Crow v. Jensen, 494 N.W.2d 186, 188 (S.D. 1992) (internal citation and quotation marks omitted). "It is a question of fact which varies with the facts

11

and circumstances of each case whether [Mrs. Katon's] negligence is slight compared to that of [Mr. Pickett]." Id. To compare Mr. Pickett's negligence, if any, and Mrs. Katon's contributory negligence, if any, requires the court to judge the credibility of the witnesses. That the court cannot do at this juncture when ruling on a summary judgment motion.

"It has long been established that it is inappropriate to resolve issues of credibility . . . on motions for summary judgment. It is equally clear that where such issues are presented, the submission of affidavits or depositions is insufficient to support a motion for summary judgment." Hardin v. Pitney-Bowes Incorporated, 451 U.S. 1008, 1008-09 (1981).

The court finds there exists a genuine dispute over material facts which must be resolved at trial. Anderson, 477 U.S. at 248. Plaintiffs' motion for partial summary judgment is denied.

PLAINTIFFS' MOTION FOR TRIAL DATE

Plaintiffs move the court to set a date certain for trial. (Docket 41). As the docket in this case reflects, there are still unresolved procedural matters and at least one deposition to complete. See i.e., Dockets 96 and 99. Until those matters are resolved and the parties have contemplated settlement or mediation at the close of all pretrial discovery, the court is not inclined to set a date certain for trial. Plaintiff's motion is denied as premature.

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiffs' motion for partial summary judgment (Docket 37) is denied without prejudice.

IT IS FURTHER ORDERED that plaintiffs' motion for a trial date (Docket 41) is denied without prejudice as premature.

Dated August 27, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE