UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL KATON, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR C.K., K.K., AND T.K.; AND SARA KATON,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 5:16-CV-05023-JLV<br><br>ORDER |

This is an action for personal injury and property damage brought under the Federal Tort Claims Act. Defendant filed a Motion to Exclude or Strike, asking the court to exclude Plaintiff's expert neuropsychologist. (Doc. 100). In response, Plaintiffs brought a Motion for Leave to Amend their Expert Designations (Doc. 106). United States District Court Judge Jeffrey L. Viken, Chief Judge, referred all pretrial motions to this magistrate judge for determination. (Doc. 89).

## **FACTUAL BACKGROUND**

Plaintiffs allege that an employee of the United States Postal Service negligently drove a postal truck into Michael Katon's vehicle on September 20, 2013, causing injuries to occupants Sara Katon and their minor children C.K., K.K., and T.K. (Doc. 5). K.K. was seven years old at the time of the accident. (Doc. 110). In the months following the accident, K.K. was seen several times

1

by Dr. Jay Bogard at the Queen City Regional Medical Clinic in Spearfish, South Dakota. Dr. Bogard noted that K.K. exhibited classic symptoms of a moderate traumatic brain injury. On October 9, 2014, Dr. Bogard referred K.K. to neurologist Dr. Jorge Sanchez, at Regional Medical Clinic Neurology, and to Dr. Teresa Hastings at Regional Rehab Institute. Dr. Hastings conducted a neuropsychological evaluation of K.K. on November 14, 2014. (Doc. 109-5). On August 17 and 25, 2015, Dr. Hastings completed an updated neuropsychological evaluation at Scovel Psychological and Counseling Services in Rapid City. In her evaluation. Dr. Hastings recommended that K.K. should continue to be followed by a neurologist. (Doc. 109-6). Dr. Hastings found that K.K. suffered from postconcussive syndrome affecting her emotional, psychological, and physical well-being, as well as her scholastic performance. (Id. at p. 8).

On August 18, 2016, Plaintiffs timely disclosed Dr. Hastings as a treating neuropsychological doctor in this case. On September 20, 2016, Plaintiffs additionally designated Dr. Hastings as an expert. (Doc. 102-6, 102-7). Plaintiffs disclosed Dr. Hasting's raw data on June 22, 2017. Rapid City Regional produced K.K.'s remaining raw data on July 27, 2017, four days before Defendant's scheduled deposition of Dr. Hastings. (Doc. 110 at p. 11). The parties agreed to postpone Dr. Hasting's deposition. Defendant never sought to reschedule the deposition, and did not disclose a rebuttal expert to Dr. Hastings. The deadline to disclose experts expired on November 3, 2017, and the discovery deadline ran on December 1, 2017. (Doc. 44).

2

In early 2018, Dr. Hastings left Scovel Psychological due to drug-related criminal charges. Plaintiffs later learned that Dr. Hastings pleaded guilty to two counts of misrepresentation to obtain a controlled substance. (Doc. 112 at p. 3). Dr. Kari Scovel assumed K.K.'s treatment and evaluations at Scovel Psychological. On March 2, 2018, Dr. Scovel clinically interviewed K.K. (Doc. 109-6 at p. 9). Dr. Scovel found that K.K. meets the criteria for mild neurocognitive disorder due to traumatic brain injury, as well as postconcussive syndrome. (Id. at p. 23).

On June 26, 2018, Plaintiffs requested updated medical records from Scovel Psychological. On July 9, 2018, Plaintiffs provided Defendant with those records and notified Defendant that Dr. Scovel had replaced Dr. Hastings as K.K.'s treating neuropsychologist at Scovel Psychological. (Doc. 102-1). Defendant moved to exclude or strike Dr. Scovel as an expert on August 8, 2018. (Doc. 100). Plaintiffs received Dr. Scovel's final report on August 10, 2018, and provided Defendants with the final report and Dr. Scovel's raw data on August 16, 2018. On August 27, 2018, Plaintiffs provided Defendant with supplemental expert disclosures including Dr. Scovel's information and evaluation report. (Doc. 109-8). On August 29, 2018, Plaintiffs moved for leave to amend their expert designations. (Doc. 106).

## DISCUSSION

Plaintiffs request to substitute Dr. Hastings with Dr. Scovel. In determining whether to allow a substitute expert, courts rely on Federal Rules of Civil Procedure 16(b) and 6(b) and treat the request for a substitute expert as

3

a motion to modify the scheduling order. Evans v. Hartog, 5:16-cv-5060-KES, 2017 WL 5634119, at *1 (D.S.D. Nov. 22, 2017); Pierce v. Fremar, LLC, 4:09-cv-4066-KES, 2010 WL 5172883, at *2 (D.S.D. Dec. 14, 2010). The district court has broad discretion to amend a Rule 16 scheduling order. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008). Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements. Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001). Furthermore, when filing a motion outside of the applicable deadline, the movant must show excusable neglect for an extension of time under Federal Rule of Civil Procedure 6(b)(1). Because Plaintiffs requested to amend their expert disclosures past the deadline, both Rule 16's good cause requirement and Rule 6's excusable neglect standard apply to Plaintiffs' motion. Evans v. Hartog, 5:16-cv-5060-KES, 2017 WL 5634119, at *1 (D.S.D. Nov. 22, 2017); Pierce v. Fremar, LLC, 4:09-cv-4066-KES, 2010 WL 5172883, at *2 (D.S.D. Dec. 14, 2010). Further, the court must interpret Rule 16 and Rule 6 in such a manner so as to achieve the "just, speedy, and inexpensive determination of every action." See Fed. R. Civ. P. 1.

**I.  Good Cause**

Plaintiffs contend that good cause exists to substitute Dr. Hastings with Dr. Scovel, because Dr. Hastings' departure was unforeseeable and because it is unclear whether Dr. Hastings will be available to testify. (Doc. 110 at p. 13,

4

18; Doc. 112 at p. 2, 6–7). Courts have found good cause under Rule 16(b) to substitute experts when an expert unexpectedly refuses to testify or becomes unavailable. See, e.g., Pierce, 2010 WL 5172883, at *2–4 (expert refused to testify immediately before scheduled deposition); Chrisman v. RMH Franchise Holdings, Inc., No. 5:16-cv-06144-DGK, 2018 WL 401819, at *1–2 (W.D.Mo. Jan. 12, 2018) (expert became seriously ill); The Indus. Co. Wyo., Inc. v. Factory Mut. Ins. Co., 4:10-cv-3153, 2012 WL 2830867, at *8–9 (D. Neb. July 10, 2012) (expert discovered conflict of interest); Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co., Nos. 1:04-cv-396, 1:06-cv-317, 2010 WL 3892860, at *1–4 (N.D. Ind. Sept. 30, 2010) (expert sentenced to fifteen months in prison). Based on Plaintiffs' representation that Dr. Hastings has left Scovel Psychological due to criminal charges, the court finds that good cause exists under Rule 16.

## II. Excusable Neglect

Because Plaintiffs move to amend the scheduling order after the deadline, they must also show excusable neglect. Pierce, 2010 WL 5172883, at *2. Excusable neglect has a four-part showing: "(1) the possibility of prejudice to [Defendant]; (2) the length of [Plaintiffs'] delay and the possible impact of that delay on judicial proceedings; (3) [Plaintiffs'] reasons for delay, including whether the delay was within [their] reasonable control; and (4) whether [Plaintiffs] acted in good faith." Evans, 2017 WL 5634119, at *1 (quoting Chorosevic v. MetLife Choices, 600 F.3d 934, 946 (8th Cir. 2010).

Under the first element, Defendant argues it is prejudiced because, if Plaintiffs had disclosed Dr. Scovel earlier, the court may have reached a different conclusion when considering Defendant's previous motions. (Doc. 111 at p. 3). The court finds this argument unpersuasive. Dr. Scovel's report is very similar to Dr. Hastings' opinion. See The Indus. Co. Wyo., Inc., 2012 WL 2830867, at *9 (substitute expert's report and testimony should be limited to subject matter and theories espoused by former expert). Any potential prejudice to Defendant can be cured by allowing Defendant to depose Dr. Scovel.

Under the second element, any delay must not impact judicial proceedings. There is currently no trial date set in this matter. Unlike the circumstances in Evans, where a trial date had been set and defendant delayed disclosing his substitute expert, here no trial has been scheduled. See Evans, 2017 WL 5634119, at *2. Furthermore, Plaintiffs informed Defendant of the substitution promptly after receiving K.K.'s updated medical records. Any delay incurred by allowing Defendant to take Dr. Scovel's deposition will be brief. The court finds that this delay will not affect trial of this case.

As explained above, Plaintiffs had no control over Dr. Hastings' criminal charges. Thus, element three is met. Plaintiffs similarly meet element four's requirements. As stated above, Plaintiffs promptly informed Defendant of the substitution and provided Defendant with updated medical records and Dr. Scovel's report. The court finds no evidence of bad faith. Given these facts, Plaintiff has shown excusable neglect meriting a substitute expert.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Exclude or Strike (Doc. 100) is denied. It is further

ORDERED that Plaintiffs' Motion for Leave to Amend Their Expert Designations (Doc. 106) is granted. Plaintiffs shall have 15 days to amend their Rule 26 disclosures and disclose Dr. Kari Scovel as either a treating physician pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) or an expert witness under Federal Rule of Civil Procedure 26(a)(2)(C), replacing Dr. Hastings. Thereafter, Defendant has 15 days to conduct Dr. Scovel's deposition.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 18th day of March, 2018.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge